UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RUSSELL SCOTT ANDREWS,<br><br>               Plaintiff,<br><br>    v.<br><br>ELMORE COUNTY DETENTION CENTER, BADGER MEDICAL, PHYSICIAN, NURSE #1, NURSE #2, MENTAL HEALTH PROVIDER, and SHERIFF RICK LAYHER,<br><br>               Defendants. | Case No. 1:12-cv-00311-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

      Plaintiff Russell Scott Andrews is a prisoner in the custody of the Idaho Department of Correction (IDOC), currently incarcerated at Idaho Correctional Center. Plaintiff claims that when he was in the custody of Elmore County and incarcerated at the Elmore County Detention Center (ECDC), he was deprived of his Eighth Amendment right to adequate medical care. Now pending before the Court is Defendants' Motion to Dismiss for failure to exhaust administrative remedies as required by the Prison Litigation Reform Act. (Dkt. 20.) Plaintiff has not responded to the Motion to Dismiss. Also pending is Defendant ECDC's Motion to Dismiss, in which counsel for Defendants requests substitution of Elmore County as a Defendant, rather than ECDC (Dkt. 18).

      Having carefully reviewed the record, the Court finds that the parties have

**MEMORANDUM DECISION AND ORDER - 1**

adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral argument. Therefore, the Court will decide this matter on the written motions, briefs and record. D. Idaho L. Civ. R. 7.1(d). Because Plaintiff failed to exhaust available administrative remedies prior to filing the instant action, the Court will grant Defendants' Motion and dismiss this case without prejudice.

## BACKGROUND

Less than two weeks before he was taken into custody, Plaintiff was the victim of a hit-and-run. The accident left him with three broken ribs, right chest contusion, and a concussion. (FAC, Dkt. 7, ¶¶14-15.) The doctor prescribed Plaintiff hydrocodone and flexeril for the pain. (*Id.* ¶16.) After he was released from the hospital he checked himself into a mental health facility for several days. While there, Plaintiff received therapy and was prescribed medication. (*Id.* ¶¶17-18.)

Plaintiff was later arrested and placed in the ECDC, where his medications were confiscated. He informed jail staff, as well as jail medical providers, of his pain and mental health issues and that he was currently taking medications prescribed by doctors. Plaintiff was told that the jail doctor only came one day per week and claims medical staff "refused him any further care" except to give him Tylenol. (*Id.* ¶22.) When Plaintiff was seen by the doctor two days later, the doctor allegedly "did not examine Plaintiff," and told him that the doctor "couldn't prescribe him anything for his pain or mental health

**MEMORANDUM DECISION AND ORDER - 2**

issues." (*Id.* ¶23.) The doctor also stated that "they do not prescribe narcodics [sic] at the jail, and Plaintiff would just have to deal with the pain as best he could." (*Id.*)

Plaintiff did see a mental health treatment provider, who was not a psychologist. Plaintiff explained his mental health issues, but the provider "told Plaintiff that he was not going to prescribe him anything or recommend the doctor give him anything, because it was all in his head, and he needed to work it out himself." (*Id.* ¶25.)

Plaintiff filed the instant civil rights action, under 42 U.S.C. § 1983, in June 2012. Plaintiff later filed a First Amended Complaint (FAC) as required by the Court. (Dkt. 6 & 7.) On July 2, 2013, the Court screened the FAC pursuant to 28 U.S.C. §§ 1915 and 1915A and determined that it stated a colorable claim for relief against Sheriff Layher and Badger Medical. (Dkt. 9.) Plaintiff was also allowed to proceed against Elmore County because Plaintiff did not know the service address of Badger Medical nor the identities of any of the individual employees of Badger Medical who were involved in his medical treatment. The Court gave Plaintiff 120 days from the date Elmore County files an answer to "(1) state the true names of the individual defendants who caused his injuries, (2) inform the Court of Badger Medical's service address, and/or (3) state additional facts showing that the alleged violations were the result of a policy, custom, or practice of Elmore County." (*Id*. at 4.) To date, only the Elmore County Detention Center and Sheriff Layher ("the Elmore County Defendants") have appeared in this action.

The Elmore County Defendants have now filed a Motion to Dismiss, arguing that

**MEMORANDUM DECISION AND ORDER - 3**

Plaintiff failed to exhaust his administrative remedies. For the reasons that follow, the Court agrees.

## DISCUSSION

1.  **Standard of Law for Exhaustion of Administrative Remedies**

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*, a prisoner (or inmate in a county jail) is required to exhaust all of his administrative remedies within the prison system before he can bring a civil rights lawsuit challenging the conditions of his confinement. 42 U.S.C. § 1997e(a). "Proper" exhaustion of administrative remedies is required, meaning that the inmate must comply "with [the jail's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The exhaustion requirement is based on the important policy concern that jail officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204.

Failure to exhaust is an affirmative defense that is "subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment." *Wyatt v. Terhune*, 315

**MEMORANDUM DECISION AND ORDER - 4**

F.3d 1108, 1119 (9th Cir. 2003). In the context of such a motion, a court's consideration of evidence outside of the pleadings does not transform the motion to dismiss into a motion for summary judgment. Rather, in deciding a motion to dismiss for failure to exhaust, the Court "may look beyond the pleadings and decide disputed issues of fact." *Id.* at 1120. If a prisoner has failed to exhaust his administrative remedies, the appropriate remedy is dismissal without prejudice. *Id.*

The defendant bears the burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant does so, "the burden shifts to the plaintiff to show that the administrative remedies were unavailable." *Albino v. Baca*, 697 F.3d 1023, 1031 (9th Cir. 2012). Confusing or contradictory information given to a prisoner "informs [the] determination of whether relief was, as a practical matter, 'available.'" *Brown*, 422 F.3d at 937.

Administrative remedies will be deemed unavailable and exhaustion excused if an inmate shows that the required procedural steps were "not known and unknowable with reasonable effort." *Albino*, 697 F.3d at 1037. A complaint will not be dismissed for failure to exhaust if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, or if jail staff took any other "affirmative actions" that interfered with an inmate's efforts to exhaust. *Id.* at 1034, 1039. It is not enough that the prisoner was subjectively unaware of proper grievance procedures; that lack of awareness must also be "objectively reasonable." *Id.* at 1038.

**MEMORANDUM DECISION AND ORDER - 5**

2.     **Elmore County Detention Center Grievance Process**

The ECDC has a written grievance policy outlining the steps required for an inmate to exhaust administrative remedies. If an inmate has a grievance, he "should first contact a detention staff member to voice the grievance." (Dorothy Aff., Dkt. 20-2, ¶ 6 and Ex. A.) If the inmate's concern is not resolved at this initial step, the inmate must contact the shift supervisor. If this still does not resolve the problem, an inmate "may ask for a grievance form. This form must be filled out completely and submitted to the Jail Administrator." (*Id*.) The policy does not set forth a specific deadline for an inmate to submit a grievance form. (*Id*.)

The policy states that, ordinarily, an answer to the inmate's grievance "will be returned in a few days." (*Id*.) If the grievance constitutes an emergency, the inmate will be segregated and the Jail Administrator contacted. If the inmate is not satisfied with the response to the grievance, he may file an appeal within 10 working days of that response. (*Id*.) The grievance process is not exhausted until all of these steps are completed. (*Id*. ¶ 8.)

3.     **Plaintiff Did Not Exhaust Available Administrative Remedies as to Any of His Current Claims**

Plaintiff filed several written requests during his stay at the ECDC. On January 23, 2011, Plaintiff requested envelopes and paper, which were then delivered to him. (Ex. B to Dorothy Aff., Dkt. 20-2 at 45.) Two days later, Plaintiff sent an inmate request form asking "to be released by 8:00 am on Saturday. Reseived [sic] a message to start work

**MEMORANDUM DECISION AND ORDER - 6**

with JC Tree Service at 9:00 am." (Ex. C to Dorothy Aff., Dkt. 20-2 at 46.) The shift supervisor denied this request, stating that Plaintiff was "on felony D.J.T. [discretionary jail time] and only doing 10 day [sic]." (*Id.*)

On January 26, 2011, Plaintiff requested the opportunity to call the courthouse to request "a vacate or getting a payment plan for a fine due Friday." (Ex. D. to Dorothy Aff., Dkt. 20-2 at 47.) A deputy responded that Plaintiff would have to send a letter to the court. (*Id.*)

Plaintiff's medical records show that from January 20 to 29, 2011, jail medical staff prescribed Plaintiff naproxen and ibuprofen in varying dosages, as well as various other medications. (Dorothy Aff. ¶ 14 and Ex. F.) Plaintiff filled out a request for medical care on January 21, 2011, stating that he "was in a car wreck 1 week ago, out of Naproxim [sic], need IBU 800," most likely referring to 800 milligrams of ibuprofen. (Ex. E to Dorothy Aff., Dkt. 20-2 at 48.) Plaintiff was released from the ECDC on January 29, 2011.

None of these requests dealt with Plaintiff's current claims that he was denied adequate mental health care or that jail medical staff improperly changed his medications and refused to continue his previously prescribed medications. Therefore, Plaintiff's claims are not exhausted.

The only issue that is exhausted is Plaintiff's request for ibuprofen, which he made on January 21. It was exhausted even though no grievance or grievance appeal was filed

**MEMORANDUM DECISION AND ORDER - 7**

as to this issue, because the medical request was granted in the sense that Plaintiff was given ibuprofen. *See Harvey v. Jordan*, 605 F.3d 681, 685 (9th Cir. 2010) ("An inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies. Nor is it the prisoner's responsibility to ensure that prison officials actually provide the relief that they have promised.").

However, Plaintiff does not assert a claim regarding ibuprofen in his First Amended Complaint. Indeed, he claims he should *not* have been given over-the-counter medication like ibuprofen or Tylenol; instead, he claims he should have been allowed to continue the prescription medications he had been taking before he arrived at the ECDC. The January 21 medical request cannot be construed as expressing dissatisfaction with the medical provider's treatment in general, or the decision to discontinue Plaintiff's other medications in particular. Therefore, none of the claims contained in the FAC were properly exhausted.

4.  **Defendant Badger Medical**

Defendant Badger Medical has not yet been served. However, Plaintiff did not exhaust his claims against any Defendant, and the Court's decision to grant the Elmore County Defendants' Motion to Dismiss thus applies to Badger Medical—and all of the unidentified Defendants—as well. *See Columbia Steel v. Ahlstrom Recovery*, 44 F.3d 800, 802 (9th Cir. 1995) (upholding "dismissal with prejudice in favor of a party which had not yet appeared, on the basis of facts presented by other defendants which had

**MEMORANDUM DECISION AND ORDER - 8**

appeared"); *Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981) ("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related."). All of Plaintiff's claims against all Defendants will be dismissed.

## CONCLUSION

Defendants have met their burden of showing that Plaintiff did not properly exhaust his current claims, and Plaintiff has offered nothing to rebut that showing. Therefore, this case must be dismissed without prejudice.

## ORDER

IT IS ORDERED:

1. The Elmore County Defendants' Motion to Dismiss for Failure to Exhaust (Dkt. 20) is GRANTED.

2. The ECDC's Motion to Dismiss (Dkt. 18), construed as a motion for substitution, is DENIED as MOOT.

3. This case is DISMISSED without prejudice.

DATED:  **March 11, 2014**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 9**